IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| DAMON J. TITCHBOURNE, | CV 12–195–M–DLC-JCL |
| Plaintiff, | |
| vs. | FINDINGS & RECOMMENDATION |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Damon Titchbourne brings this action under 42 U.S.C. § 405(g) seeking judicial review of the decision of the Commissioner of Social Security denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433, and for supplemental security income benefits under Title XVI of the Act, 42 U.S.C. §§ 1381-1383(c).

Titchbourne protectively filed his benefit applications on March 24, 2010, alleging disability since November 1, 2006 due to a herniated disc, sciatica, spinal stenosis, depression, anxiety, and chronic pain. (Tr. 168-71; 212). Titchbourne's claim was denied initially and on reconsideration. (Tr. 122-25). After an administrative hearing, at which Titchbourne appeared with counsel, an

Administrative Law Judge ("ALJ") found that Titchbourne. (Tr. 21-38). The Appeals Council denied Titchbourn's subsequent request for review, thereby making the ALJ's decision the agency's final decision for purposes of judicial review. (Tr. 1-5). Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

Titchbourne was 29 years old at the time of his alleged onset date, and 35 years old at the time of the ALJ's decision.

## I.      Standard of Review

This Court's review is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). This Court must uphold the Commissioner's findings "if supported by inferences reasonably drawn from the record." *Batson v.*

*Commissioner of Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "[I]f evidence exists to support more than one rational interpretation," the Court "must defer to the Commissioner's decision.  *Batson*, 359 F.3d at 1193 (*citing Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999).  This Court "may not substitute its judgment for that of the Commissioner."  *Widmark*, 454 F.3d at 1070 (*quoting Edlund*, 253 F.3d at 1156).

## II.   Burden of Proof

To establish disability, a claimant bears "the burden of proving an 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Batson*, 359 F.3d at 1193-94 (*quoting* 42 U.S.C. § 423(d)(1)(A)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process.  20 C.F.R. § 404.1520.  The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).    At the first step, the ALJ will consider whether the claimant is engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(I).  If not, the ALJ must determine at step two whether the claimant has any impairments that qualify as "severe" under the regulations.  20

C.F.R. § 404.1520(a)(4)(ii).  If the ALJ finds that the claimant does have one or

more severe impairments, the ALJ will compare those impairments to the

impairments listed in the regulations.  20 C.F.R. § 404.1520(a)(4)(iii).  If the ALJ

finds at step three that the claimant has an impairment that meets or equals a listed

impairment, then the claimant is considered disabled.  20 C.F.R. §

404.1520(a)(iii).  If, however, the claimant's impairments do not meet or equal the

severity of any impairment described in the Listing of Impairments, then the ALJ

must proceed to step four and consider whether the claimant retains the residual

functional capacity (RFC) to perform his or her past relevant work.  20 C.F.R. §

404.1520(a)(4)(iv).  If the claimant establishes an inability to engage in past work,

the burden shifts to the Commissioner at step five to establish that the claimant

can perform other work in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).

## III.  Discussion

Following the steps in the sequential evaluation process, the ALJ first found

that Titchbourne met the insured status requirements of the Act through March 31,

2009.  (Tr. 23).  The ALJ then observed that although Titchbourne's earnings

records showed no evidence of income since 2005, he had reported engaging in

significant work activity to his treatment providers in 2010.  (Tr. 24).  But

because Titchbourne had evidently failed to report any income earned during that

period to the Internal Revenue Service, the ALJ was unable to determine whether his earnings were at or above the substantial gainful activity level. Giving Titchbourne the benefit of the doubt, the ALJ assumed that he had not engaged in any substantial gainful activity since his alleged onset date. (Tr. 23-24).

Moving to step two, the ALJ found that Titchbourne had the following severe impairments: "status post 2 back surgeries with recurrent herniated disc, failed back surgery syndrome, lumbar radiculitis, lumbar spondylosis, degenerative disc disease, chronic pain, depressive disorder, NOS, anxiety disorder, NOS, substance induced mood disorder, opiate dependence, hepatitis C, and personality disorder, NOS with antisocial traits." (Tr. 24). At step three, the ALJ determined that Titchbourne did not have an impairment or combination of impairments that met or medically equaled any impairment described in the Listing of Impairments. (Tr. 24). The ALJ also found that while Titchbourne's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," his "statements concerning the intensity, persistence, and limiting effects of th[o]se symptoms" were not entirely credible. (Tr. 33). The ALJ concluded that Titchbourne had the residual functional capacity to perform a limited range of light work, and so could not perform his past relevant work as a construction cleanup laborer, dozer operator, lumber grader, sandblaster,

or truckbed liner applicator.  (Tr. 27, 36)).  At step five, however, the ALJ found there were a significant number of jobs in the economy that Titchbourne could perform, including light level unskilled work as a bench assembler, photocopy machine operator, or small products assembler.  (Tr. 37).

Titchbourne does not argue that the ALJ erred in assessing the medical records relating to his physical impairments, or in assessing the impact of those physical impairments on his ability to perform work related functions.  Nor does he challenge the ALJ's adverse credibility determination.  Titchbourne  instead focuses exclusively on the ALJ's evaluation of his various mental impairments.

## A.    Listed Impairments

Titchbourne first argues the ALJ erred by not obtaining an updated consultative psychological examination or eliciting testimony from a medical expert for purposes of determining whether his mental impairments satisfied one of the listings.

At this third step in the sequential evaluation process, the ALJ must consider whether the claimant's impairment, or combination of impairments, meets or equals an impairment listed in 20 C.F.R. P. 404, Subpt. P, App. 1.  "If the claimant meets or equals one of the listed impairments, a conclusive presumption of disability applies." *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990).  To

meet the requirements of a listing, the claimant "must have a medically determinable impairment(s) that satisfies all of the criteria in the listing." 20 C.F.R. § 404.1525(d). To demonstrate medical equivalence, the claimant must have impairments, considered alone or in combination, that are "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404. 1526(a). The Ninth Circuit has made clear that the "ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." *Lewis v. Apfel*, 236 F.3d 505, 512 (9th Cir. 2001). Nevertheless, the burden remains with the claimant, who must present medical evidence that his impairments meet or medically equal all of the criteria of a listed impairment. *See Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).

In light of Titchbourne's various mental impairments, the ALJ in this case considered whether he met or equaled the criteria of Listing 12.04 for affective disorders, Listing 12.06 for anxiety related disorders, or Listing 12.08 for personality disorders.[1] Listings 12.04, 12.06, and 12.08 require that a claimant's

---

[1] The ALJ also considered Listing 12.09 for substance addiction disorders. Listing 12.09 requires "[b]ehavioral changes or physical changes associated with the regular use of substances that affect the central nervous system." Listing 12.09 then identifies several impairments associated with substance addiction, and cross-references other listings, including Listing 5.05 for liver damage and Listings 12.04 and 12.06, 12.08, that should be used to evaluate the severity of those impairments. As discussed above, the ALJ properly found that Titchbourne's mental impairments

mental impairments result in at least two of the following paragraph B criteria: marked restrictions of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation each of extended duration. The phrase "repeated episodes of decompensation each of extended duration" means "three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." 20 C.F.R. pt. 404, subpt. P, app'x 1, § 12.00C.

Listings 12.04 and 12.06 also provide for alternative paragraph C criteria. Paragraph C of Listing 12.06 requires a "complete inability to function independently outside the area of one's home." Paragraph C of Listing 12.04 requires:

> Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following: (1) [r]epeated episodes of decompensation, each of extended duration; or (2) [a] residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) [c]urrent history of 1 or more years' inability to function outside a highly supportive living

---

did not satisfy Listings 12.04, 12.06, and 12.08. The ALJ also found that Titchbourne's Hepatitis C did not did not satisfy Listing 5.05 – a determination that Titchbourne does not challenge on appeal. (Tr. 25). Having considered the relevant cross-referenced listings, the ALJ properly found that Titchbourne's impairments did not satisfy Listing 12.09.

arrangement, with an indication of continued need for such an arrangement.
20 C.F.R. pt 404, subpt. P, app. 1, § 12.04C.

Beginning with the paragraph B criteria, the ALJ found that Titchbourne had no limitations in social functioning, moderate restrictions in activities of daily living, moderate difficulties in maintaining concentration, persistence, or pace, and had experienced one to two episodes of decompensation, each of extended duration. (Tr. 26). Because Titchbourne's mental impairments did not cause at least two marked limitations, or one marked limitation and repeated episodes of decompensation, the ALJ concluded that the paragraph B criteria were not satisfied. The ALJ also found that the paragraph C criteria were not satisfied because Titchbourne had not had repeated episodes of decompensation as defined in the listings, and there was no evidence that he would be expected to decompensate with even a minimal increase in mental demands or that he required a highly supporting living arrangement.

The ALJ premised her assessment of the paragraph B and C criteria in large part on a report prepared by Dr. Edward Trontel, who performed a consultative psychological evaluation on July 1, 2009. (Tr. 26, 272-75). During the evaluation, Titchbourne described engaging in various activities, including hunting, fishing with friends, some household chores, reading, and watching

television. (Tr. 272). Titchbourne also reported having worked for few weeks the previous year as a trainee for Kirby Vacuum sales, but indicated the job did not continue due to the economic downturn. (Tr. 272). Titchbourne said that prior to the Kirby sales job, he had worked odd jobs doing lawn work and painting through a job service. (Tr. 272). Dr. Trontel noted that Titchbourne's primary complaint was chronic pain following back surgery, and during one emergency room visit he was transferred to Pathways Treatment Center on July 27, 2008 due to suicide ideation after being denied services at a pain clinic and breaking up with a girlfriend. (Tr. 272; 612-30). At Pathways, Titchbourne was diagnosed with unspecified depression, polysubstance dependence for cannabis, opiates, and benzodiazepines, and the presence of antisocial traits. (Tr. 272). Titchbourne was discharged five days later, and did not follow up with any treatment for his depression. (Tr. 273; 276).

Dr. Trontel observed that Titchbourne was able to communicate ideas coherently and progressively, had no gross memory or language use difficulties, had fair social judgment, and was "able to relate to others, albeit in what seemed to be a self-involved manner." (Tr. 274). Dr. Trontel diagnosed Titchbourne with unspecified depressive and anxiety disorders, but found that his "psychological

condition did not impose a potent impediment to vocational success," and believed he would be capable of routine, repetitive work. (Tr. 274-75). Dr. Trontel concluded that Titchbourne's social functioning was not compromised, and found no marked limitation in his activities of daily living, or attention, pace and persistence. (Tr. 275).

The ALJ found that Dr. Trontel's opinions and observations were consistent with and supported by the record as a whole, including treatment notes from Pathways and counseling from the methadone clinic where Titchbourne received treatment. (Tr 26). The ALJ gave Dr. Trontel's report great weight, and in doing so found that Titchbourne's mental impairments did not satisfy the paragraph criteria of Listing 12.04, 12.06, or 12.08.

Titchbourne argues that the ALJ erred by relying on Dr. Trontel's report because it was outdated, and claims the ALJ should have obtained an updated psychological evaluation or called on a medical expert to testify at the hearing for purposes of determining whether his mental impairments were of listing-level severity.

Generally speaking, an "ALJ in social security case has an independent "'duty to fully and fairly develop the record and to assure that the claimant's

interests are considered.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (*quoting Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)). But that duty is triggered only when "there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). *See also Nguyen v. Commissioner of Social Sec.*, 2008 WL 859425 *7 (E.D. Cal. 2008).

Social Security Ruling 96-6p addresses the Commissioner's obligations at step three, and directs that "the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight." SSR 96-6p, 1996 WL 374180. Titchbourne points out that Dr. Trontel examined him in July 2009 – eight months before he protectively filed his application for benefits. Because Dr. Trontel examined him before he even filed his application for benefits, Titchbourne apparently takes the position that the ALJ failed to fully develop the record, and failed to comply with SSR 96-6p because did not obtain the requisite expert opinion on the issue of equivalence.

But because Titchbourne alleged disability since November 1, 2006, Dr.

Trontel's examination was well within the relevant time frame. It appears that Dr. Trontel must have evaluated Titchbourne in connection with a prior unsuccessful benefit application. The ALJ construed Titchbourne's current application as an implied request to reopen his prior applications, which she then granted. (Tr. 21). Having reopened Titchbourne's prior applications, the ALJ properly "considered all the medical evidence of record, including evidence relative to the time period of the prior denial and relating back to [Titchbourne's] alleged onset date of November 1, 2006. (Tr. 21). That evidence included Dr. Trontel's report. The ALJ permissibly relied on Dr. Trontel's opinion when making her step three determination.

SSR 96-6p nonetheless requires that an ALJ obtain an updated medical opinion under the following circumstances: (1) when no additional medical evidence is received, but in the opinion of the ALJ or the Appeals Council the symptoms, signs, and laboratory findings reported in case record suggest that a judgment of equivalence may be reasonable; or (2) when additional medical evidence is received that in the opinion of the ALJ or the Appeals Council may change the State agency medical or psychological consultant's finding that the claimant's impairments are not equivalent in severity to any impairment in the

Listing of Impairments.  SSR 96-6p, 1996 WL 362203 *4-5.

Titchbourne claims that the ALJ should have obtained an updated expert opinion because he suffered two episodes of decompensation after Dr. Trontel saw him on July 1, 2009.  Titchbourne was admitted to Pathways on July 13, 2009, and again in December 2011.  (Tr. 276-84; 467-70).  When he was admitted in July 2009, Titchbourne stated he was thinking of shooting himself because he was in pain and had no way of obtaining medication.  (Tr. 283).  Titchbourne was discharged five days later, after having been placed on antidepressant medication and oxycodone. (Tr. 283-84).

Titchbourne returned to Pathways again in December 2011 because of symptoms relating to opioid withdrawal. (Tr. 465-73).   The admitting psychiatrist, Dr. James Allen, stated that "the majority of the reason that he is being admitted is for substance dependence issues."   Dr. Allen noted that Titchbourne apparently had apparently "reported suicidal ideation largely to be admitted for methadone given his recent withdrawal and reported inability to obtain this medication" after having been discharged from the Northwest Spine and Pain Center after refusing a drug screen, and refusing to see a doctor in order to get his medications refilled. (Tr. 469; 643).   Dr. Rougle diagnosed Titchbourne with a substance induced

mood disorder and opioid dependent, and observed that Titchbourne's "complaints of depression and suicide quickly disappeared" once a friend gave him the money necessary for him to return to the methadone clinic. (Tr. 466).

The ALJ considered treatment records from both of these visits when assessing Titchbourne's credibility and residual functional capacity, and at step three of the sequential evaluation process. (Tr. 31, 33). The ALJ acknowledged in light of his treatment at Pathways in July 2008, July 2009, and December 2011, that Titchbourne "has had episodes of decompensation," but found "the evidence does not reflect repeated episodes, as defined in the listings." (Tr. 26). As set forth in the regulations," repeated episodes of decompensation each of extended duration" means "three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." 20 C.F.R. pt. 404, subpt. P, app'x 1, § 12.00C. The ALJ reasonably found based on the fact that Titchbourne had been admitted to Pathways only three times over the course of three and half years that the decompensation requirements of Listing 12.04, 12.06, and 12.08 were not satisfied. The ALJ could reasonably conclude that even if Dr. Trontel seen the treatment records from Titchbourne's admission to Pathways in July 2009 and December 2011, his opinion as to medical equivalency would not have changed.

Under the circumstances, no updated medical opinion was necessary.

Titchbourne was admitted to Pathways for a fourth time in July 2012 – several months after the ALJ's decision. (Tr. 875-84). Titchborne submitted the treatment records from this most recent visit to the Appeals Council. (Tr. 4). The Appeals Council considered the additional evidence but found it did not provide a basis for changing the ALJ's decision. (Tr. 2). Titchborne has not challenged the Appeals Council's finding on appeal.

The ALJ also considered Listing 12.09 for substance addiction disorders. Listing 12.09 requires "[b]ehavioral changes or physical changes associated with the regular use of substances that affect the central nervous system." Listing 12.09 then identifies several impairments associated with substance addiction, and cross-references other listings, including Listing 5.05 for liver damage and Listings 12.04 and 12.06, 12.08, that should be used to evaluate the severity of those impairments. As discussed above, the ALJ properly found that Titchbourne's mental impairments did not satisfy Listings 12.04, 12.06, and 12.08. The ALJ also found that Titchbourne's Hepatitis C did not did not satisfy Listing 5.05 – a determination that Titchbourne does not challenge on appeal. (Tr. 25). Having considered the relevant cross-referenced listings, the ALJ properly found that

Titchbourne's impairments did not satisfy Listing 12.09.

For the reasons set forth above, the Court finds that the ALJ complied with the directives of SSR 96-6p. The evidence was neither insufficient no ambiguous on the question of whether Titchbourne's mental impairments were equivalent to a listing, and the ALJ did not have a duty to develop the record any further.

## B.     Special Technique

Titchbourne next argues the ALJ failed to follow the special technique for evaluating the nature and severity of mental impairments.

Where, as here, the claimant presents a "colorable claim of mental impairment," the ALJ must evaluate that alleged impairment using the special psychiatric review technique described in 20 C.F.R. §§ 404.1520a, 416.920a. *Keyser v. Comm'r Soc. Sec. Admin*, 648 F.3d 721, 726 (9th Cir. 2011). This special technique requires the ALJ to rate the degree of functional limitation in four areas: activities of daily living; social functioning; concentration, persistence, and pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(b)-(c). The ALJ must then determine the severity of the mental impairment based in part on the degree of functional limitation, and "if the impairment is severe, proceed to step three of the disability analysis to determine if the impairment meets or equals

a specific listed mental disorder. *Keyser v. Commissioner of Social Security*, 648 F.3d 721, 725 (9th Cir. 2011) (citing 20 C.F.R. § 404.1520a(c)(1)&(2)). The ALJ must document his application of the technique in his written decision by "incorporating the pertinent findings and conclusions based on the technique" and including "a specific finding as to the degree of limitation in each of the functional areas."[2] *Keyser*, 648 F.3d at 725.

As discussed above, the ALJ found that Titchbourne had no limitations in social functioning, moderate restrictions in activities of daily living, moderate difficulties in maintaining concentration, persistence, or pace, and had experienced one to two episodes of decompensation, each of extended duration. Although the ALJ did not document her application of the special technique in her step two analysis, she included the requisite findings and conclusions in her step three analysis. Because the ALJ thus rated Titchbourne in the four functional areas described in the special technique, and incorporated those findings into her written decision, the ALJ accomplished all that the special technique required of her. The ALJ determined that Titchbourne had medically determinable mental impairments,

---

[2] Alternatively, the ALJ may "complete a PRTF and append it to the decision." *Keyser*, 648 F.3d at 725. The record contains the PRTF completed by Dr. Bateen, but the ALJ did not append it to the decision.

rated the degree of his limitation in each of the four functional areas described in

20 C.F.R. § 404.1520a(c)(3), and assessed the severity of Titchbourne's mental

impairments accordingly.  The ALJ's decision adequately documents her

application of the special technique when evaluating the severity of Titchbourne's

medically determinable mental impairments.

### C.    Medical Opinions

Finally, Titchbourne contends the ALJ did not provide sufficient reasons for

discounting the opinion of Dr. Rougle, the psychiatrist who treated him at

Pathways.[3]  In particular, Titchbourne claims the ALJ should have given more

weight to Dr. Rougle's opinion that he was suffering from severe depression with

low functioning, and overlooked the fact that Dr. Rougle evaluated him with

Global Assessment Function scores of 40 upon his admission to Pathways in July

2008, a GAF of 46 when he was admitted in July 2009, and a score of 35 when he

---

[3] Titchbourne also argues the ALJ erred by discounting Dr. Wise's opinion as to the severity of his depression.  But Dr. Wise only evaluated Titchbourne's physical impairments at Pathways and deferred to other physicians with regard to any psychiatric diagnosis.  (Tr. 615-17; 471-73).  Because Dr. Wise did not render an opinion as to the severity of Titchbourne's depression, this argument is without merit.

arrived at Pathways in December 2011. (Tr. 469, 614, 278).[4]

Although the ALJ did not specifically discuss the GAF scores assigned by
Dr. Rougle upon Titchbourne's admission to Pathways, she acknowledged and
accepted that Titchbourne had experienced at least one episode of decompensation
that required inpatient treatment.  As Dr. Rougle's treatment notes reflect,
however, Titchbourne improved within days during each of his inpatient stays.
Titchbourne's GAF was 60 at the time of his discharge in July 2008 and July
2009, and 55 when discharged in December 2011.   (Tr. 284, 465, 630).  The ALJ
accepted Dr. Rougle's opinion that Titchbourne suffered from severe depression
and had experienced at least one period of decompensation, but reasonably found
that the low functioning he displayed upon his admission to Pathways when
decompensated was not representative of his overall residual functional capacity.

IV.   **Conclusion**

For all of the above reasons, the Court concludes that the ALJ's decision is

---

[4] GAF is the Global Assessment of Functioning as described in the American
Psychiatric Association's "Diagnostic and Statistical Manual of Mental Disorders."
A GAF 31-40 indicates "major in impairment in several areas."  A GAF of 41-50
indicates "serious symptoms (e.g. suicidal ideation, severe obsessional rituals,
frequents shoplifting) or any serious impairment in social, occupational, or school
functioning (e.g., no friends, unable to keep a job)."  A GAF of 51-60 indicates
moderate symptoms or moderate difficulty in social, occupational, or school
functioning.  DSM-IV, at 32.

based on substantial evidence and free of legal error.  Accordingly,

IT IS RECOMMENDED that Titchbourne's motion for summary judgment be DENIED, the Commissioner's motion for summary judgment be GRANTED, and the Commissioner's decision be affirmed.

DATED this 25th day of November, 2013

Jeremiah C. Lynch
United States Magistrate Judge